On Petition fob a Reheabing.
Reinhabd, J.
In their brief upon the petition for a rehearing, counsel for appellant say:
“The answers of appellant to the appellee’s complaint show:—
“1. The issuing of the policy in suit, a partial payment of the premium necessary to carry it in force and the execution of notes payable in installments for the balance of the year’s premium.
“2. That the policy in suit lapsed for the nonpayment of premiums, the decedent failing to pay the notes given for the deferred payments of the first year’s premium.
“3. That after the policy in suit had been forfeited, the appellee and her husband procured a loan of $2,300, the appellant believing, as it had the right to believe, that if Isaac Woods lived he would keep up his insurance and pay his debts, and if he died that the insurance money would pay the debt, the appellant having the right to deduct the indebtedness from the policy out of this loan of $2,300; the answers show the premiums in arrears on the policy in suit were paid and the forfeiture waived and new life put in the policy.
“This is a fair statement of the issues raised upon the ■question of the construction of the policy, 'all other in *354 debtedness being first deducted,’ etc. The provision last above quoted is not meaningless; it is not ambiguous, and we think clearly means that the indebtedness owing, growing out of or connected with the policy in suit, is to be first deducted before the ■ appellee has any right of recovery.”
Granting that the above is a fair statement of what was involved in the transaction between the parties in connection with the contract of insurance, the conclusion that the contract authorized a deduction of the amount of the loan does not follow. It is true that some insurance companies loan money, but it does not, therefore, follow that when any insurance company issues a policy in which it is provided that out of the proceeds of the policy all other indebtedness, except that specifically mentioned, shall be deducted, that the parties contemplated a loan by the insurance company to the insured, and that this was one of the items to be deducted. The parties must beheld to have contemplated only what was. fairly within the scope of their present negotiations. 'Could it be justly maintained that if the company had, subsequently to the issuing of the policy, sold the insured a farm or a house and lot that such an item of indebtedness was contemplated by the parties? Possibly such an item might be properly deducted if the transaction were confined to the original contracting parties— the company and the insured. But when a third party, who has a right or interest in the policy, which vested before the indebtedness accrued, comes in and asserts a claim to the insurance money, can it be held that she took the policy subject to a burden that was not fairly within the contemplation of the parties to the contract when it was made? We think not.
But it is urged that the policy had been forfeited, that new life was given it only by virtue of the loan, and that *355 if this had not been made, the appellee would not have had any policy at all. This may be conceded. And yet the making of the loan did not create a new contract of insurance between the parties. It only revived what rights either party or all parties had after the original contract had been entered into. The loan did not impress the original contract with any new features whatever, any more than if the policy had been revived without the making of the loan, but by the simple payment and acceptance of the premium. It will not do to say that the effect of our ruling will be to “destroy the rights of many people and lay down a dangerous principle of law,” as counsel urge in their brief. It is an easy matter for an insurance company, when it issues a policy, to insert a provision that any money loaned the insured shall be deducted from the proceeds of the policy. If the contract is between the company and the insured alone, the former can also secure itself in any loan it may make in future by an assignment of the policy. It is always a safe rule to hold the parties to their contract, interpreted in the light of the surrounding circumstances and the position of the parties. The danger lies in courts suffering themselves, out of mere consideration that a hardship might be entailed upon a party in a particular case, to give constructions to contracts un-warranted by the terms thereof, and not within the scope of the manifest intention of the parties. It is useless to attempt to invoke the legal principle here that where a married woman receives a benefit from her contract she can not accept such benefit and reject the burden of the contract, or disavow it entirely. The appellee did not procure any loan from the appellant. The fact that she signed the notes given for the loan does not prove that she obtained the money, nor indeed does it make her liable thereon, if, as in the present case, she *356 was only surety for her husband. All the transactions connected with the loan occurred after the making of the original contract of insurance, and her vested interest in the same could not be defeated by the fact that her husband subsequently obtained a loan from the company for which he attempted to pledge the policy.
It is now insisted that we were in error in assuming that the money realized from the sale of the real estate was applied to the extinguishment of the premium notes then due from the insured in preference to the payment of the loan; and counsel state that there is nothing in the pleadings to warrant such a conclusion. Counsel for appellant, in their original briefs, discussed the alleged errors of the rulings of the court upon the several paragraphs of the answer together, and did not direct our attention to the sufficiency of the several paragraphs in detail. In one of the answers the pleader sets forth the substance of the judgment and decree of foreclosure of the mortgages of the real estate. It appears from this judgment and decree that the court found that certain sums of money, to secure which the mortgages were executed, were then due, and others would subsequently become due; that the amount then due was $352.51, upon certain notes not specified, together with $178.62 attorney’s fees; that there were to become due thereafter on certain notes the following sums, to wit:
October 30,1889................$ 161.04
October 30,1890................ 161.04
January 1,1890................ 184.00
January 1,1891................ 184.00
January 1,1892................ 184.00
March 31, 1892................2,346.00
It was then decreed that the land be sold to satisfy the mortgages; that the proceeds be applied, first, to the payment of the costs accrued and accruing; then to the *357 amount due, to wit, the $352.51 and the attorney’s fee of $178.62, making in all $531.13, and the interest thereon, and lastly to'the amount not yet due. Of course, we can only presume that these payments were applied according to the decree of the court, whether such decree was correctly or incorrectly made.
It is further shown in this paragraph of the answer, that the property sold for $587.28, and that after payment of costs the sheriff paid the appellant $534.66, which must have been applied, first, to the payment of said $531.13 then due, according to the order of the court in the foreclosure proceedings, and which amount represented what was due on the premium notes. With this payment, as we held in our former opinion, the policy was revived, and if the policy remained in force after the payment of the third premium note (which was included in the payment of the $531.13), it continued to remain in force until the death of the insured as a paid-up term policy under the stipulations of the contract of insurance. It is now contended that the amount of forborne premiums remaining unpaid at the time of the death of the insured, should have been deducted from the face of the policy. It is true the policy provides for such deduction, but there is no answer raising this question, nor was there any motion to so modify the judgment as to make it conform to the contract in this respect. The question can not now be presented for the first time.
Appellant’s learned counsel further contend, however, that the assignment of the policy by the wife was not an act of suretyship, hut that “her signature merely had the effect of making her a party to an agreement that if the insurance company would loan her husband $2,300, he would take out insurance upon his life to secure the loan, and make her a gift of whatever money might be *358 payable under the contract of insurance after the lien had been discharged.”
We do not so construe the contract for the loan. The reviver of the insurance policy was not a new contract of insurance. If the appellee’s husband had borrowed the $2,300 from a third person and had applied a portion of it to the payment of premiums so as to revive the policy, and the appellee had attempted to assign the policy to the person who loaned her husband the money, as a security for the loan, no one would certainly contend that the assignment was not an act of suretyship by the wife in behalf of her husband. There is no difference in principle. The fact that the wife in some way receives a benefit from the transaction will not render her liable, if she is in reality a surety. A husband may borrow money and give his wife as surety, but her act in becoming surety will not bind her, even though it is shown that the husband subsequently made her a present of the money.
Here it is not contended that the wife was liable for any portion of the debt which her husband owed the appellant for insurance, nor that the money was borrowed for the benefit of her own estate. Had the husband lived till after the expiration of the fifteen years for which the policy was written, he would have received the whole amount of the insurance. The cases relied upon by appellant’s counsel do not support their contention. Vogel v. Leichner, 102 Ind. 55; Orr v. White, 106 Ind. 341; Thacker v. Thacker, 125 Ind. 489.
Petition overruled.
Filed Dec. 12, 1894.